## UNITED STATES

v.

Frank R. LAROCCA, 354 38 5667, Staff Sergeant (E–6), U.S. Marine Corps.

NMCM 91 02061.

U.S. Navy–Marine Corps Court of Military Review.

Sentence Adjudged 22 April 1991.

Decided 23 Sept. 1993.

LT Peter Van Hartesveldt, JAGC, USNR, Appellate Defense Counsel.

LCDR J. Richard Chema, JAGC, USN, Appellate Government Counsel.

LT Paul Jones, JAGC, USNR, Appellate Government Counsel.

Before JONES, Senior Judge and REED and LAWRENCE, JJ.

PER CURIAM:

Despite his pleas, a special court-martial composed of military judge alone convicted appellant[1] of one specification of perjury[2] and one specification of obstruction of justice,[3] in violation of Articles 131 and 134, Uniform Code of Military Justice, 10 U.S.C.

---

1. Appellant was acquitted of conspiring to obstruct justice and of a failure to go.

2. Charge II: Violation of the UCM, Article 131 Specification: In that Staff Sergeant Frank R. LaRocca, U.S. Marine Corps, 1st Supply Battalion, 1st Force Service Support Group, Rear, Fleet Marine Force Pacific, Camp Pendleton, California, having taken a lawful oath in a trial by summary court-martial of the said Staff Sergeant LaRocca, that he would testify truly, did, at Camp Pendleton, California on or about 26 September 1990, willfully, corruptly, and contrary to such oath, testify falsely in substance that during July 1990 Ms. Rosie Pollanz and he together completed a rental agreement by which he would sublet a bedroom from her for $305.00 for one month, after which he would lease another apartment in her com-

plex, and also that he was to pay the $305.00 to Ms. Pollanz after he received advance basic allowance for quarters and advanced variable housing allowance, which testimony was upon a material matter and which he did not then believe to be true.

3. Charge II: Violation of the UCMJ, Article 134 Specification: In that Staff Sergeant Frank LaRocca, U.S. Marine Corps, 1st Supply Battalion, 1st Force Service Support Group, Rear, Fleet Marine Force Pacific, Camp Pendleton, California, did, at Oceanside, California, during August and September 1990, wrongfully impede a trial by court-martial in the case of *United States v. Gunnery Sergeant Frank LaRocca* by persuading Ms. Rosie Pollanz to lie to government officials about matters relevant to the investigation of charges in that case.

§§ 931 and 934, both offenses arising out of appellant's earlier summary court-martial. The court sentenced appellant to a bad-conduct discharge, reduction to pay grade E–1, and forfeiture of $500.00 pay per month for three months. The convening authority approved the sentence, and except for the punitive discharge, ordered the sentence executed.

## I. Facts

Appellant asked a friend, Mrs. Rosie Pollanz, to obtain a lease agreement from the apartment complex where she lived. Mrs. Pollanz obtained a photocopy of a standard lease form used by the lessor and gave it to appellant. Appellant then prepared a lease that denominated Mrs. Pollanz as the agent for the property company and appellant as the tenant. Appellant presented the lease to his battalion administration office in an attempt to obtain a $905.00 advance payment of Basic Allowance for Quarters and Variable Housing Allowance [hereinafter BAQ and VHA]. At his summary court-martial, appellant was convicted in accordance with his pleas of making a false official statement and presenting a fraudulent claim in violation of Articles 107 and 132, UCMJ, 10 U.S.C. §§ 907 and 932.

At the summary court-martial, appellant made a sworn statement during the sentencing phase of the trial in which he attempted to mitigate his actions. Although the lease was fraudulent, appellant testified that the lease actually represented a sublease agreement between himself and Mrs. Pollanz. According to appellant, he was to pay Mrs. Pollanz half her month's rent for August, 1990, in return for her permitting him to stay at her residence; he was then to move into another apartment at the same complex in September, 1990, when the apartment he wanted would become available.

Mrs. Pollanz testified by way of deposition that, on 25 September 1990, appellant initially showed her the fraudulent lease he had prepared and that he had told her that "somebody was trying to bust him." According to Mrs. Pollanz, appellant instructed her that some lawyers would call her and that she was to say that she had agreed to sublease her apartment to appellant. Mrs. Pol-lanz initially complied with appellant's request, but later informed authorities that she had lied. Mrs. Pollanz's deposition was entered into evidence at appellant's special court-martial without any objection by the trial defense counsel.

Appellant asserts three assignments of error:

I. THE GOVERNMENT FAILED TO PROVE APPELLANT GUILTY BEYOND A REASONABLE DOUBT OF CHARGE II AND THE SPECIFICATION.

II. THE ASSISTANCE OF TRIAL DEFENSE COUNSEL WAS INEFFECTIVE.

III. THE MILITARY JUDGE ERRED WHEN HE FAILED TO VOIR DIRE APPELLANT WITH RESPECT TO THE INTRODUCTION OF THE DEPOSITION OF ROSIE POLLANZ.

We shall discuss only the first two assigned issues, finding appellant's third assignment of error to be without merit.

## II.

Appellant's initial assignment of error presents three independent grounds upon which he contends that the evidence was legally and factually insufficient to sustain a conviction for perjury: first, that the government failed to prove the content of appellant's testimony at the summary court-martial; second, that the government failed to prove that appellant's alleged testimony was given under oath; and third, that the government failed to prove beyond a reasonable doubt that appellant's testimony was false.

We reject the first two contentions based upon the testimony of the summary court-martial officer, Captain Kirkpatrick. Captain Kirkpatrick testified that appellant made a sworn statement during the sentencing phase of the summary court-martial in which appellant testified substantively that Mrs. Pollanz had "secured an example of the lease she had entered into, and that together, they worked on drafting up this blank lease to reflect what their agreement was," that appellant would live at Mrs. Pollanz's apart-

ment for one month for $305.00, and that the following month he would move into another apartment at the complex once it became available. (R.52). Captain Kirkpatrick's testimony sufficiently establishes the appellant's alleged false testimony and, in fact, is buttressed by the defense witnesses called in an attempt to establish that Mrs. Pollanz had in fact agreed to sublease a room in her apartment to appellant.

■ Appellant also contends that the government failed to prove the falsity of appellant's statements because the deposition of Mrs. Pollanz was uncorroborated. A prosecution for perjury does in fact impose additional requirements of proof that the statement in question was false:

> The falsity of the allegedly perjured statement cannot be proved by circumstantial evidence alone, except with respect to matters which by their nature are not susceptible of direct proof. The falsity of the statement cannot be proved by the testimony of a single witness unless that testimony directly contradicts the statement and is corroborated by other evidence, either direct or circumstantial, tending to prove the falsity of the statement.

¶ 57c(2)(c), Manual for Courts–Martial (MCM), United States, 1984.

In the instant case, the deposition of Mrs. Pollanz directly contradicted appellant's statements that he had an agreement to sublease a room from her. Mrs. Pollanz' testimony was corroborated by the fraudulent lease itself in which her signature had been misspelled. The corroborating circumstances "merely support the inference that [a] defendant is lying." *United States v. Guerrero,* 13 U.S.C.M.A. 463, 32 C.M.R. 463, 467, 1963 WL 4583 (quoting, *United States v. Nessanbaum,* 205 F.2d 93, 95 (3d Cir.1953)). Additionally, the parties stipulated to the testimony of Thomas Smith, the manager of the apartment complex, that apartments had been vacant, contradicting appellant's statements that he was waiting for an apartment that would become available in September.

> [W]here the alleged false oath relates to two or more facts and one witness contradicts the accused as to one fact and another witness as to another fact, the two witnesses corroborate each other in the fact that the accused swore falsely, and their testimony will authorize a conviction.

*United States v. Tunstall,* 24 M.J. 235, 237 (C.M.A.1987), *quoting Goins v. Commonwealth,* 167 Ky. 603, 181 S.W. 184, 186 (1916). Based upon this evidence, we ourselves are convinced also of appellant's guilt beyond a reasonable doubt.

### III.

■ Appellant next contends that the assistance of trial defense counsel was ineffective. Appellant presents a two-prong basis in support of this claim: first, that trial defense counsel failed to respect appellant's desire to testify as to all charges and specifications, and second, that counsel was ineffective in not objecting to the introduction of the deposition of Mrs. Pollanz. Trial defense counsel limited direct examination of appellant to an unauthorized absence offence of which appellant was acquitted. Appellant now asserts that his counsel ignored his "expressed desires" to testify in regards to all the offenses charged. *See United States v. Belizaire,* 24 M.J. 183 (C.M.A.1987) (whether an accused exercises his right to testify in his own behalf is a choice belonging exclusively to the accused, not his lawyer). Appellant also asserts that his counsel's decision not to personally confront Mrs. Pollanz with vigorous cross-examination was contrary to their previous discussions and done without his consent.

The test for ineffectiveness of counsel is governed by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Appellant must demonstrate that counsel's representation was unreasonably deficient compared to professional norms, and that there is a reasonable probability that absent counsel's deficiency, the outcome would have been different. *See also United States v. Scott,* 24 M.J. 186 (C.M.A.1987).

By affidavit, trial defense counsel denies that these decisions were made without appellant's consent. Counsel states that after numerous consultations, it was the appellant's decision to limit his testimony to the

unauthorized absence offense and to call another witness to contest the remaining charges. The reason for this decision, according to counsel, was to limit possible damaging cross-examination that might corroborate the statements of Mrs. Pollanz. Counsel also replies that the appellant made an informed choice to allow the government to utilize the deposition of Mrs. Pollanz rather than having her testify because there was a better chance of discrediting her statements within the deposition if she were unavailable to explain inconsistencies in the deposition.

We believe that the appellant was consulted and agreed to these tactical decisions. The government presented largely "a paper case" consisting of stipulations of expected testimony and the deposition. In some instances, failure to object might be viewed as ineffective assistance of counsel. In the instant case, however, all parties agree that the government could have produced these witnesses with little difficulty. Additionally the evidence given by way of deposition was not as complete or as extensive as it might have been if the witnesses had testified at trial. The record shows a consistent trial strategy by defense counsel to limit the possible damage of the government's witnesses while presenting the defense's own witnesses and documents to impeach the deposition of Mrs. Pollanz. This strategy was not entirely unsuccessful. If appellant's affidavit were taken at face value, his counsel would have had to have entirely rearranged his trial strategy at the last minute or have intentionally lied to appellant throughout the period of his representation, neither of which do we think is likely.

Counsel's trial performance, specifically his decisions to limit appellant's testimony to the unauthorized absence charge and to allow the government to introduce the deposition of Mrs. Pollanz without objection, must be "evaluated from counsel's own perspective." *United States v. Brothers,* 30 M.J. 289, 291 (C.M.A.1990). "We must give deference to counsel's tactical judgment and should not substitute our view with the benefit of hindsight." *United States v. Bono,* 26 M.J. 240, 242 (C.M.A.1988). We find these decisions by trial defense counsel to be supported by sound trial strategy and to be within the bounds of reasonable professional assistance.

Accordingly, the findings and sentence as approved on review below are affirmed.